**IN THE UNITED STATES DISTRICT COURT**

                         **FOR THE DISTRICT OF KANSAS**

UNITED STATES OF AMERICA,    )
                             )
                 Plaintiff,  )    **CRIMINAL ACTION**
                             )
v.                           )    No.  07-10221-02-MLB
                             )
TYRONE ANDREWS,              )
                             )
                 Defendant.  )
                             )

                            **MEMORANDUM AND ORDER**

This matter comes before the court for consideration of the following motions:

1. Defendant's motion to suppress evidence and information obtained pursuant to a search warrant (Doc. 91), and the government's response thereto (Doc. 104) and defendant's reply (Doc. 105); and

2. Defendant's motion to suppress evidence obtained from defendant's stop and arrest (Doc. 93), and the government's response thereto (Doc. 102).

The motions are fully briefed and the court conducted an evidentiary hearing on April 30, 2008. (Docs. 81, 98). Defendant's motion to suppress evidence obtained pursuant to a search warrant is granted and defendant's motion to suppress the evidence obtained from the stop is denied.

**I. FACTS**[1]

---

[1] The facts were obtained largely from the affidavit attached to the search warrant, which has not been disputed, and testimony during the hearing.

On July 17, 2007, a home owned by defendant was searched by government officials pursuant to a warrant issued by Chief Magistrate Judge Humphreys on the previous day, July 16. The affidavit supporting the search warrant was sworn to by Gregory J. Heiert (hereinafter the "Heiert Affidavit").

The Heiert Affidavit stated that it was submitted "pursuant to Rule 41 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 3103a, seeking an order authorizing the surreptitious entry, and delayed notice, into the premises known as 1821 S. Ridgewood." The Heiert Affidavit averred that defendant has committed, is committing and will continue to commit possession with intent to distribute and the distribution of controlled substances, conspiracy, engaging in a continuing criminal enterprise, the use of a communication facility in facilitating the commission of such narcotics offenses and maintaining drug-involved premises. The Heiert Affidavit requested that authorization be granted to visually document and inspect the residence, take photographs, and look for evidence of drug trafficking. The officers sought authority to inspect documents to determine whether defendant was the only person utilizing the residence for drug trafficking and/or how the drugs were being paid for or transferred. Also, the officers wanted to inspect the residence to determine if it was suitable for the installation of electronic devices to intercept visual images and/or verbal conduct.

The Heiert Affidavit detailed the ongoing investigation of defendant's activities. Since 2006, many governmental agencies have been investigating Crip gang members and their associates. A confidential informant (CI1) identified defendant as a multi-kilogram

-2-

dealer and one of the primary illegal drug suppliers to Crip gang members in Wichita, Kansas.  In 1994, Lementrius Toney (an Insane Crip) was arrested with approximately nine ounces of crack cocaine and later told agents that defendant was his source of supply.  Officers searched defendant's sister's residence and discovered $38,760 that did not belong to defendant's sister.  Defendant's sister informed the officers that the money must belong to defendant because he had access to the house.  Defendant, however, was not charged with a crime and agreed to forfeit $30,260 of the money to the government.

In May 2007, officers began conducting surveillance on defendant.  A confidential informant (CI2) disclosed that defendant had been distributing illegal narcotics since the early 1990s.  On numerous occasions CI2 purchased cocaine from defendant.  The majority of defendant's purchases were for one-half to two kilos of cocaine per week.  Defendant told CI2 that the supplier, a Hispanic male, was not paid for the cocaine until defendant sold the cocaine.  Defendant told CI2 that he has a stash house where he keeps his money and cocaine and that the stash house is in the vicinity of Mt. Vernon and Oliver Streets.

Officers began surveillance on a residence located at 1821 S. Ridgewood, a home located approximately one-half mile from Mt. Vernon and Oliver Streets. The surveilling officers observed that Andrews appeared at the house only in the afternoons and early evenings. Otherwise, the house seemed to be unoccupied.  After leaving the house, Andrews would make quick stops at other locations in Wichita where he would remain only for a few minutes.  On June 4, 2007, the agents searched the trash container at the house on Ridgewood.  The

container contained an empty box.  The box, which originally held sandwich bags, an item that is commonly used for packaging drugs, tested positive for the presence of cocaine.  On July 8, 2007, the trash was pulled again at the house on Ridgewood.  The officers discovered four empty boxes of sandwich bags and empty boxes of baking soda.  Baking soda is often used as "cut" during the manufacturing process of crack cocaine.

On June 23, 2007, CI2 made a controlled drug purchase from defendant.  CI2 contacted defendant by telephone and asked defendant to supply CI2 with cocaine.  After making the call, defendant drove to two different locations, where he only stayed for a few minutes. Defendant then met with CI2 and gave him two ounces of cocaine and one ounce of "cut" for $1000.  On June 27, 2007, CI2 was instructed to phone defendant and request four and one-half ounces of cocaine. Defendant met with CI2 and exchanged approximately four and one-half ounces of cocaine for $2340.  Defendant told CI2 that defendant had sold to "Gun."  "Gun" then supplied Isaac (another co-defendant) who was stopped by the police and the drugs were seized.  See Doc. 117.

The Heiert Affidavit stated that a search warrant was necessary because other investigative techniques would not be possible.  The Heiert Affidavit sought permission to delay notification for 45 days or defendant's arrest, whichever came first, because Heiert believed that notification of the search might have an adverse result, namely flight from prosecution, evidence destruction, intimidation or witnesses or otherwise seriously jeopardize the investigation. Heiert stated that if defendant was notified then defendant might conclude that he was under investigation and change the location of the drug

house, destroy evidence, flee the jurisdiction and notify co-conspirators who are also under investigation.

The warrant was issued as follows:

> In the matter of the search of the residence at 1821 S. Ridgewood, Wichita, Kansas. . . there is now concealed a certain property, which constitutes evidence of drug trafficking, including but not limited to illegal narcotics, drug paraphernalia, packaging material, documents, weapons, money or monetary instruments; and intangible property such as information about the layout of the residence and how it is being used for the distribution of illegal narcotics.
>
> I am satisfied that the affidavit establishes probable cause to believe that the property so described is now concealed on the premises above-described and establish grounds for the issuance of this warrant.
>
> YOU ARE HEREBY COMMANDED to conduct a surreptitious entry and search of the identified premises on or before 7/26/07 (not to exceed 10 days) for the property and/or information specified, serving this warrant and making the search at any time in the day or night, without knocking, as I find reasonable and good cause has been established. Furthermore, you are authorized to delay notification of the execution of this warrant to the property owner, in that, you are authorized to not leave a copy of this Search Warrant and a receipt at the above described premises when you leave it. Notification will be delayed 45 days from the execution of this warrant; however, a written inventory or receipt of the property or photographs seized will be provided to this Court as required by law.

(Doc. 91, exh. 1).

Upon executing the warrant, the officers took photographs and observed the visual layout of the residence. Inside the residence, a detective observed six glass jars with white powder, plastic sandwich bags, brown lunch sacks, large quantity of baking soda, duct tape that was wadded up and a set of scales. On August 29, 2007, the government requested an additional 45 days to provide notice of the search to defendant. The government stated that if defendant was

notified of the search it might result in flight from prosecution, evidence destruction or tampering, intimidation of potential witnesses or otherwise seriously jeopardize the investigation. (Doc. 91, exh. 1). Chief Magistrate Humphreys granted the government an additional 45 days to notify defendant of the search.

On September 6, 2007, the government was authorized to tap two different phone lines belonging to defendant. During phone calls, officers heard defendant and the individuals to whom defendant was speaking use the terms 9 piece, half, whole. Officers also heard references to money - 10, 46, 17, 18. On September 22, 2007, officers had a meeting at the Wichita Police Department. Officers were told that they were going to arrest defendant at some point in the day based on the information gained in the investigation. During the afternoon, defendant spoke to Ricky Henry and James Black, both co-defendants in this case. Officers knew the voices of those individuals because of prior calls they had listened to. Defendant was at the house on Ridgewood and received calls from those individuals who used the above terms in speaking with defendant. Defendant informed those individuals that he would be coming to their locations. Defendant then met with an individual named Pizzano, who officers believed was one of defendant's sources for cocaine. Lieutenant Easter then determined that defendant would be placed under arrest.

At 6:45 p.m. in the evening, Detective Bryan Martin was called and told to stop defendant's car. Martin was told that backup would be arriving to assist in taking defendant into custody. Martin did not observe any traffic violations committed by defendant but used his

emergency lights to stop defendant in the area of Second and Spruce Streets. At the stop, Martin informed defendant that he was being stopped for a traffic violation and asked defendant for his identification and insurance papers. Defendant complied. When Martin returned to his car, a supervisor called Martin and instructed Martin to place defendant under arrest. Martin returned to defendant's car and asked defendant to get out of the car. Defendant did not comply and instead attempted to flee in his car. Martin returned to his car and proceeded to chase defendant. After turning the corner, Martin observed a leather bag in the middle of the street. Martin retrieved the bag and continued chasing defendant. Once defendant was stopped, he was placed under arrest. Upon searching defendant's car, the officers found cocaine and a gun. The bag contained more cocaine.

**II.   Analysis**

Defendant seeks to suppress evidence from both the search warrant executed at the Ridgewood residence and his subsequent arrest.

### A.   Search Warrant

The Fourth Amendment to the United States Constitution provides that:

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The validity of a warrant is not determined by "nit-picking" discreet portions of the application. Rather, the test is whether, under the totality of the circumstances presented in the affidavit, the issuing judge had a "substantial basis" for

determining that probable cause existed.  <u>Illinois v. Gates</u>, 462 U.S. 213, 238-39 (1983); <u>United States v. Harris</u>, 369 F.3d 1157, 1165 (10th Cir. 2004) ("In determining whether a search warrant was supported by probable cause, we review "the sufficiency of the affidavit upon which a warrant [wa]s issued by looking at the totality of the circumstances and simply ensuring 'that the [issuing] magistrate had a substantial basis for concluding that probable cause existed.'" (internal citation omitted)).

Probable cause exists when "the facts presented in the affidavit would warrant a man of reasonable caution to believe that evidence of a crime will be found at the place to be searched."  <u>Harris</u>, 369 F.3d at 1165 (quoting <u>United States v. Hernandez-Rodriquez</u>, 352 F.3d 1325, 1330 (10th Cir. 2003)).  The Tenth Circuit has adopted the general rule that probable cause requires a "nexus between [the contraband to be seized] or suspected criminal activity and the place to be searched."  <u>United States v. Rowland</u>, 145 F.3d 1194, 1203-04 (10th Cir. 1998)(quoting <u>United States v. Corral-Corral</u>, 899 F.2d 927, 937 (10th Cir. 1990)).

In addition to these general standards regarding probable cause, the search warrant must also describe with particularity the place to be searched and the things to be seized. U.S. Const. amend. IV.  The particularity requirement ensures that the search is as limited as possible, and was intended to prevent the wide-ranging, "exploratory rummaging" of a "general search," which the colonists abhorred. <u>United States v. Foster</u>, 100 F.3d 846, 849 n.3 (10th Cir. 1996) (quoting <u>Coolidge v. New Hampshire</u>, 403 U.S. 443, 467 (1971)).

In this case, the warrant was issued pursuant to 18 U.S.C. §

3103a, a provision of the Patriot Act. A notable difference between a warrant issued in accordance with § 3103a is that the notice of the search is not given until after the search and seizure occurs. 18 U.S.C. § 3103a(b)(3). These searches have been termed a "surreptitious entry" and it appears that they are likely constitutional based on Supreme Court precedent. United States v. Frietas, 800 F.2d 1451, 1456 (9th Cir. 1986) (citing Dalia v. United States, 441 U.S. 238, 247, 99 S. Ct. 1682, 60 L. Ed.2d 177 (1979)).

Section 3103a(b) states the following:

> Delay. With respect to the issuance of any warrant or court order under this section, or any other rule of law, to search for and seize any property or material that constitutes evidence of a criminal offense in violation of the laws of the United States, any notice required, or that may be required, to be given may be delayed if
>
> (1) the court finds reasonable cause to believe that providing immediate notification of the execution of the warrant may have an adverse result (as defined in section 2705);
>
> (2) the warrant prohibits the seizure of any tangible property, any wire or electronic communication (as defined in section 2510), or, except as expressly provided in chapter 121, any stored wire or electronic information, except where the court finds reasonable necessity for the seizure; and
>
> (3) the warrant provides for the giving of such notice within a reasonable period of its execution, which period may thereafter be extended by the court for good cause shown.

The express requirements of 18 U.S.C. § 3103a require the issuing court to find "reasonable cause to believe that providing immediate notification of the execution of the warrant may have an adverse result" and expressly prohibit the seizure of tangible property. Defendant asserts that the warrant is defective because it does not prohibit the seizure of tangible property and because it does not

adequately state the reasons for delay. Moreover, defendant asserts that the subsequent request for delay does not adequately set forth a reasonable reason for additional delay.

In this case, Magistrate Judge Humphreys did not state the reasons for delay on the face of the warrant. While the affidavit does state that notification could cause defendant to change the location of his drug house, destroy evidence, flee the jurisdiction and notify co-defendants, the warrant does not incorporate the affidavit. In determining whether the warrant has complied with section 3103a, the court is persuaded by the discussion of the requirements of the statute set forth in United States v. Espinoza, No. 05-2075, 2005 WL 3542519, *2 (E. D. Wash. Dec. 23, 2005).

> In order to determine whether "the detailed [statutory] restrictions" were considered by the issuing court, this Court infers the Supreme Court requires such statutory findings to be placed in the order; this inference is bolstered by the fact the order authorizing the wiretap in Dalia v. United States, 441 U.S. 238, 99 S. Ct. 1682, 60 L. Ed.2d 177 (1979), like the wiretap orders authorized in this case, specifically set forth the findings required by § 2518(3). Likewise, in the context of a delayed notice search and seizure warrant under 18 U.S.C. § 3103a, with arguably a greater infringement upon Fourth Amendment rights than a § 2518 wiretap, it is just as important to ensure the issuing court determined after reviewing the application that reasonable cause exists to believe that providing immediate notification of the warrant would have an adverse result. Accordingly, in order to ensure Fourth Amendment privileges are protected and infringements on such are able to be closely scrutinized, the Court finds the Fourth Amendment requires the issuing court to specify in writing that it made the determinations required by § 3103a(b).

Espinoza, 2005 WL 3542519, *2.

While the court may infer that the magistrate agreed with and accepted the affidavit, the court cannot assume the magistrate's statutory findings without an actual finding by the magistrate on the

-10-

warrant or a statement on the warrant adopting the reasons for the delay set forth in the affidavit. Without the presence of any statement setting forth the statutory reasons for delay, "this Court must guess at what was actually intended, an unacceptable course when it involves the rights guaranteed under the Fourth Amendment." Id.

Moreover, the court finds that the warrant is defective because it allows for the seizure of tangible evidence. Specifically, the warrant provides that the officers may search the premises "for including but not limited to illegal narcotics, drug paraphernalia, packaging material, documents, weapons, money or monetary instruments; and intangible property such as information about the layout of the residence and how it is being used for the distribution of illegal narcotics." The warrant then provides that "[n]otification will be delayed 45 days from the execution of this warrant; however, a written inventory or receipt of the property or photographs seized will be provided to this Court as required by law." While the affidavit states that the officers will be taking photographs of the house and does not discuss seizure of any items, the warrant clearly authorizes the officers to seize tangible items. Therefore the warrant does not comply with section 3103a.

The government asserts that if the court finds the warrant defective then the court should apply United States v. Leon, 468 U.S. 897 (1984), and determine that the officers acted reasonably and in good faith. In Leon, the Supreme Court recognized four situations in which an officer would not have reasonable grounds for believing a warrant was properly issued. In these situations, the good-faith exception to the exclusionary rule would not apply.

> First, evidence should be suppressed if the issuing magistrate was misled by an affidavit containing false information or information that the affiant would have known was false if not for his "reckless disregard of the truth." Second, the exception does not apply when the "issuing magistrate wholly abandon[s her] judicial role." Third, the good-faith exception does not apply when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Fourth, the exception does not apply when a warrant is so facially deficient that the executing officer could not reasonably believe it was valid.

United States v. Danhauer, 229 F.3d 1002, 1007 (10th Cir. 2000) (citing throughout Leon, 468 U.S. at 897).

"[T]he key question here is whether the officers, when in good faith relying on the form of the warrant, could reasonably believe the warrant was a § 3103a(b) warrant authorizing a 'sneak and seize' search." Espinoza, 2005 WL 3542519, *4. In the absence of evidence regarding the officer(s) belief, the court finds that a reasonable officer could not reasonably believe that the warrant was a valid section 3103a warrant. The warrant clearly authorized the seizure of items and also did not set forth the statutory reasons for delay. The warrant is facially deficient and any evidence that was seized from the search must be suppressed.[2] Id.

**B.   Arrest**

Next, defendant asserts that the warrantless stop and subsequent

---

[2] While the search may have benefitted the officers in their investigation of defendant, the court does not understand how the information obtained in the search will be used in the prosecution of defendant. Defendant asserts that the information from the search is contained in the indictment but has failed to point the court to the specific allegations that concern the fruits of the search. As a practical matter, the court does not understand how its ruling can possibly affect defendant's prosecution.

-12-

arrest were done without probable cause and therefore all fruits of the arrest must be suppressed. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The question of whether defendant's arrest was lawful must be determined based on facts known to the officers at the time of the arrest.

> "Probable cause to arrest exists only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." United States v. Valenzuela, 365 F.3d 892, 896 (10th Cir. 2004) (internal quotation marks omitted). "Probable cause does not require facts sufficient for a finding of guilt; however, it does require more than mere suspicion." United States v. Morris, 247 F.3d 1080, 1088 (10th Cir. 2001) (internal quotation marks omitted). "Probable cause is measured against an objective standard.... [T]he primary concern is whether a reasonable officer would have believed that probable cause existed to arrest the defendant based on the information possessed by the arresting officer." Valenzuela, 365 F.3d at 896-97.

United States v. Soto, 375 F.3d 1219, 1222 (10th Cir. 2004).

Defendant asserts, through cross examination and his briefing, that Detective Martin did not have probable cause to stop him for a traffic violation. Martin, however, did not stop defendant for a traffic violation but stopped defendant to arrest him for committing the crimes observed during the months-long investigation.[3] While

---

[3] The following are excerpts from Martin's cross examination:
   Question: Sir, if I understand correctly, at the time of the initial stop you told the Defendant it was a traffic stop. Is that correct?
   Answer: Yes, I did.

-13-

testifying, Martin continuously referred to the stop as a traffic stop based on a violation.  Martin testified, however, that the stop was not based on a traffic violation but rather that was the information relayed to defendant.  Although the testimony was confusing at parts, the court understands from the totality of the testimony that Martin was using the terminology "traffic stop" to identify that he had

---

    Question: Did you tell the Defendant that he had committed a traffic violation?
    Answer: Yes I did.
    Question: Your report -- do you have your report there?
    Answer: I do.
    Question: Your report doesn't indicate any traffic violation does it?
    Answer: I said I stopped him for a violation.
    Question: Okay. Does your report indicate there's a traffic violation?
    Answer: Yes I stopped him for a violation.
    Question: What was the violation? Does it say?
    Answer: I do not recall.
    Question: You don't remember what the traffic violation was?
    Answer: No.
    Question: Does your report have in it what the traffic violation was?
    Answer: No, it does not.
    Question: So the original stop was not based on probable cause but was based on a traffic violation; is that correct?
    Answer: No. The stop was based on the probable cause off the information from the wire. The traffic violation, not --
    Question: Had you been involved in this investigation before?
    Answer: Yes.
    Question: So you're saying that you stopped the car based on probable cause. Is that correct.
    Answer: Yes I did.
    Question: Does your report say that?
    Answer: No, it doesn't.
    Question: Your report says it was a traffic stop. Isn't that correct?
    Answer: It was a traffic stop, yes, it was.
    Question: But your report doesn't reflect what the traffic violation was, isn't that correct?
    Question: Is there a reason you did not put in your report that you stopped the vehicle for probable cause?
    Answer: The vehicle was stopped for traffic violation -- correction, the vehicle was stopped for probable cause.  He was told it was a traffic violation.

stopped defendant in his car and not that the stop was based on a traffic violation.  Clearly, both Martin and Goodwyn testified that defendant was being stopped in order to effectuate an arrest based on criminal activity.  Although the court has suppressed the evidence discovered in the sneak and peak search, the investigation prior to that search gave Martin probable cause to arrest defendant.  Defendant was involved in two prior controlled buys, officers observed other transactions between defendant and other co-defendants, the trash pulls resulted in evidence of cocaine and the phone conversations were indicative of drug transactions.

Therefore, defendant's motion to suppress the stop and evidence seized during his arrest is denied.

### III. Conclusion

Defendant's motion to suppress the evidence obtained as a result of the sneak and peak search warrant is granted (Doc. 91) and defendant's motion to suppress evidence seized during the arrest is denied (Doc. 93).

IT IS SO ORDERED.

Dated this   16th   day of May 2008, at Wichita, Kansas.

s/ Monti Belot<br>
Monti L. Belot<br>
UNITED STATES DISTRICT JUDGE