IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | **CRIMINAL ACTION** |
| ) | |
| v. ) | No.  07-10221-02-MLB |
| ) | |
| TYRONE ANDREWS, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

Before the court are the following:

1. Defendant's pro se motion pursuant to 28 U.S.C. § 2255 (Doc. 742);

2. Government's response (Doc. 793); and

3. Defendant's reply (Doc. 801).

The court also has reviewed the transcripts and orders of proceedings in this court, the presentence report and the Tenth Circuit's Order and Judgment of December 27, 2010, affirming defendant's convictions and sentence (Doc. 741). The court is well aware of the standards pertaining to pro se submissions and claims regarding ineffective counsel. For the following reasons, the court concludes that the motion and the files and records conclusively show that defendant is entitled to no relief and thus denies the motion.

**I.  Facts and Procedural History**

Defendant was initially indicted on December 19, 2007, along with eight co-defendants and a total of forty-seven counts.[1]  The

---

[1] The original indictment only named Jesus Valencia-Abarca. (Doc. 8).

superceding indictment alleged that defendant was the organizer of a criminal conspiracy to distribute cocaine. (Doc. 17). Defendant was the leading member of the conspiracy and was charged in the majority of the counts. On March 14, 2008, defendant's retained trial counsel, Charles O'Hara, filed a motion to suppress items seized pursuant to a search warrant and in a traffic stop. (Doc. 93). The court granted defendant's motion to suppress the items seized pursuant to the warrant but denied the motion to suppress the items seized during the traffic stop. (Doc. 122). During that same time period, the court also granted Michael Biglow's, a co-defendant, motion to suppress. The government appealed the order pertaining to Biglow but it did not appeal the granting of defendant's motion. The government was successful on appeal and thereafter sought a superceding indictment against defendant and several others.

In the second superceding indictment, defendant was alleged to have been the primary member of a conspiracy involving fifteen co-defendants. (Doc. 214). Defendant's retained counsel notified the court that he had a conflict and defendant requested court appointed counsel. The court appointed Lee Woodard, a very experienced attorney. Woodard filed twelve motions on defendant's behalf, including a motion to dismiss several counts in the superceding indictment and a renewed motion to suppress the evidence obtained during the traffic stop. Woodard also joined in several co-defendants' motions to exclude the alleged co-conspirator statements which were obtained pursuant to a wiretap on two different phone lines belonging to Andrews. On October 29, 2009, the court granted defendants' motions in part and found that the government had not

established a conspiracy between all defendants. (Doc. 565). The court noted that the conspiracy centered around Andrews and that it lacked any evidence that the members were interdependent but that the evidence showed that the members only relied on Andrews who in turn relied on Pizana and Abarca.[2] The court held that the statements could not be introduced to establish the conspiracy allegations between all members. As a result, the government moved to dismiss the second superceding indictment. (Doc. 572).

Defendant objected to the dismissal of the indictment on the basis that the prolonged continuance of the charges resulted in prosecutorial harassment. (Doc. 581). Defendant, however, was in the minority as the majority of defendants did not object to a dismissal of the case. Ultimately, the court allowed the government to dismiss the action without prejudice. The government, however, quickly – within one week – filed a third superceding indictment containing eighty-eight counts against defendant, including an allegation of a conspiracy with Jose Pizana. (Doc. 595). The court promptly set the case for trial in early January 2010.

Defense counsel filed several pretrial motions, including a motion to dismiss the indictment on speedy trial grounds. The court ruled on all motions (Doc. 644) and defendant ultimately pled guilty to all but two counts in the third superceding indictment. (Doc. 657). The plea agreement contained a waiver of appeal and waiver of a collateral attack. During the plea colloquy, the court discussed the waiver with defendant as follows:

---

[2] Abarca pled guilty to charges contained in the superceding indictment in June 2008.

>        THE COURT: Paragraph 9 says that if I accept the
> plea agreement but ultimately impose a sentence that you
> don't like, you can't withdraw your plea. And I think
> that's important because I cannot tell you today what
> sentence I'm going to impose; but if I accept your plea
> here today, you can't come back later and say I don't think
> I ought to have a sentence that high and I want a trial.
> You can't do that. The other very important paragraph, to
> me, anyway, is Paragraph 11. Have you been in a
> penitentiary before, Mr. Andrews?
>
>        DEFENDANT MR. ANDREWS: No, sir.
>
>        THE COURT: When people go to a penitentiary to serve
> a sentence, frequently they get buyer's remorse and decide
> that they either want to appeal or they want to what's
> called collaterally attack their sentence. An appeal,
> obviously, is an appeal to the next higher court, the Court
> of Appeals out in Denver. A collateral attack is different.
> A collateral attack is not an appeal. A collateral attack,
> whether it's under 28 U.S.C. Section 2255 or a Rule 60 or
> whatever, the case comes back to me. The Defendant who is
> now a prisoner files a so-called 2255 motion and the basic
> purpose is to ask me to reopen the case. There's all kinds
> of different grounds that are alleged. But the bottom line
> is that for some reason or another the defendant wants me
> to take the case back and start it over again. And in
> Paragraph 11 you are giving up your right to both appeal
> and file a collateral attack, with one exception, and that
> is this exception noted in the case of United States
> against Cockerham. And I will tell you the reason I think
> this is an important paragraph is because frequently
> defendants, when they plead guilty, they say they
> understand, they tell me that they understand what they're
> doing in this paragraph, which is giving up your right to
> appeal and giving up your right to file a collateral
> attack, and they do it anyway. And frequently they do it
> without a lawyer, particularly the 2255. And the Government
> comes back and cites this paragraph in the plea agreement
> and the Court of Appeals in Denver is almost universally
> now enforcing this paragraph against the defendant and
> dismissing the appeal or the collateral attack. So I think
> it's very important you understand it. Do you have any
> questions about what Paragraph 11 means?
>
>        DEFENDANT MR. ANDREWS: No, sir.

(Tr. at 18-19).

The following colloquy occurred in response to questions concerning defendant's plea and representation of counsel:

> THE COURT: All right. The other paragraph that probably is the most important paragraph is Paragraph 15, which basically says that you're pleading guilty because you are guilty, not for any other reason, that there aren't any promises out there that are not set forth in the plea agreement and that you understand that the decision to plead is your decision. It's not Mr. Woodard's decision or anybody else's. Is that true?
>
> DEFENDANT MR. ANDREWS: Yes, sir.

(Tr. at 19).

***

> THE COURT: Do you understand that one of the things you're doing in the petition is admitting under oath that you committed the offenses to which you're pleading guilty?
>
> DEFENDANT MR. ANDREWS: Yes, sir.

(Tr. at 20).

***

> THE COURT: Have you had sufficient time to discuss your case with Mr. Woodard?
>
> DEFENDANT MR. ANDREWS: Yes.
>
> THE COURT: And are you satisfied with the way he's handling your case?
>
> DEFENDANT MR. ANDREWS: Yes.

(Tr. at 2-3).

The court accepted defendant's plea of guilty and defendant was sentenced to twenty years on June 21, 2010. Defendant appealed his conviction and the Tenth Circuit dismissed his appeal after determining that he voluntarily waived his right to appeal. (Doc. 741). Defendant now moves for this court to vacate his plea and sentence pursuant to section 2255 on the basis that his counsel was ineffective, the Assistant United States Attorney committed prosecutorial misconduct and the undersigned committed judicial

misconduct.  The government asserts that defendant has waived his right to file a 2255.

## II. Analysis

### A. Waiver

Initially, the government asserts that defendant's motion is in violation of his plea agreement as he waived his right to present a collateral attack of his sentence.  By dismissing defendant's direct appeal, the Tenth Circuit both explicitly and implicitly found that the waiver was and is enforceable.

A waiver of the right to bring a collateral attack in a plea agreement is generally enforceable.  United States v. Cockerham, 237 F.3d 1179, 1181 (10th Cir. 2001).  The waiver is enforced so long as: (1) the collateral attack falls within the scope of the waiver; (2) the defendant knowingly and voluntarily waived his right to collateral review; and (3) enforcing the waiver would not result in a miscarriage of justice.  United States v. Kutilek, No. 07-3275, 2008 WL 109343 *2 (10th Cir. Jan. 11, 2008)(citing United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004)); see also Cockerham, 237 F.3d at 1182–83 (holding that the enforceability of a waiver of the right to bring a collateral attack is assessed under the same standards as a waiver of appellate rights). In Cockerham, however, the Tenth Circuit held that "a plea agreement waiver of postconviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver." 237 F.3d at 1187.

On direct appeal, the Tenth Circuit considered the Hahn factors and determined that defendant had knowingly and voluntarily waived his

right to appeal. (Doc. 741 at 4). Defendant does not contend otherwise in his motion. In defendant's reply brief, defendant admits that he signed a waiver and does not assert that the waiver was involuntary or made unknowingly. Defendant, however, refers to the language in the plea agreement which states that he has not waived claims of ineffective assistance of counsel or prosecutorial misconduct on any "subsequent claim." (Doc. 801 at 1).

### Scope of Waiver

Paragraph 11 of the plea agreement, entitled "Waiver of Appeal and Collateral Attack," states:

> The defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, the defendant's conviction, or the components of the sentence to be imposed herein including the length and conditions of supervised release. . . Notwithstanding the forgoing waivers, the parties understand that the defendant in no way waives any subsequent claims with regards to ineffective assistance of counsel or prosecutorial misconduct.

(Doc. 658 at 20-21).

The plea agreement is construed "according to contract principles and what the defendant reasonably understood when he entered his plea." United States v. Arevalo-Jimenez, 372 F.3d 1204, 1206 (10th Cir. 2004). The court strictly construes the waiver and resolves any ambiguities against the government and in favor of the defendant. Hahn, 359 F.3d at 1343. Bearing these principles in mind, defendant clearly waived the right to challenge counsel's performance on appeal, with the exception of any claim that falls within Cockerham. Defendant appears to focus on the last sentence in the waiver paragraph for support that he did not waive his right to bring claims of ineffective assistance of counsel. That sentence, however,

pertains to "subsequent" claims and not those claims which are made "in connection with this prosecution, the defendant's conviction, or the components of the sentence." As discussed below, the court fully explained the waiver and defendant acknowledged that he understood that section of the plea agreement.

## Voluntariness of Waiver

In assessing the voluntariness of a defendant's waiver, the court looks primarily to two factors - whether the language of the plea agreement states that the defendant entered the plea agreement knowingly and voluntarily and whether there was an adequate Rule 11 colloquy. See United States v. Smith, 500 F.3d 1206, 1210-11 (10th Cir. 2007). While defendant has made several general statements concerning the plea as "involuntary" in his petition, plaintiff has not established that the plea was not made knowingly and voluntary.

Defendant's plea agreement expressly states that he "knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, conviction and sentence." See United States v. Leon, 476 F.3d 829, 834 (10th Cir. 2007) (concluding that a defendant did not meet the burden of showing that the waiver was unknowing and involuntary in part because plea agreement contained broad waiver that defendant "knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, conviction and sentence"); see also Doc. 741 at 4 ("[The circuit] has reviewed the plea agreement, the transcripts of the plea and sentencing hearings, and the response from counsel, and [the circuit] conlude[s] that the Hahn factors have been satisfied."))

-8-

In addition, the court, during its Rule 11 colloquy with defendant, specifically discussed that he had waived his right to challenge his sentence through a § 2255 motion. Defendant assured the court that he understood the nature of § 2255 claims, that he understood that he had waived his right to assert such claims, and that he was entirely willing to do so. See id. (finding that defendant did not meet the burden of showing that the waiver was unknowing and involuntary in part because defendant testified at the plea colloquy that he was competently, knowingly, freely and voluntarily entering his plea and waiving his constitutional rights, including his right to appeal) (citing Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) ("Solemn declarations in open court [affirming a plea agreement] carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.")).

### Miscarriage of Justice

Finally, enforcing a waiver results in a miscarriage of justice only if (1) the district court relied on an impermissible factor such as race, (2) the defendant received ineffective assistance of counsel in conjunction with the negotiation of the waiver, (3) the sentence exceeds the statutory maximum, or (4) the waiver is otherwise unlawful in the sense that it suffers from error that seriously affects the fairness, integrity, or public reputation of judicial proceedings. Hahn, 359 F.3d at 1327. Defendant does not raise any claim that would fall into one of the four situations described by Hahn. While defendant repeatedly states that he received ineffective assistance

of counsel, defendant has never asserted that the ineffective assistance was in any way connected with the negotiation of the waiver. Thus defendant is foreclosed from making a claim under the waiver prong of Cockerham. The question, then, is whether defendant's claims are sufficient to trigger the "validity of the plea" prong of the Cockerham exception. Any claims that do not touch on the validity of the plea are therefore waived by the plea agreement.

### Ineffective Assistance of Counsel

Defendant argues that his counsel was ineffective for: (1) becoming a second prosecutor; (2) committing fraud; (3) conspiring with the government; (4) refusing to allow access to grand jury materials; (5) refusing to allow defendant to identify witnesses who testified before the grand jury and review the surveillance; (6) failing to challenge the validity of the indictments; (7) failing to challenge the use of the informants and the grand jury; (8) failing to request a change of venue; (9) having a conflict of interest; and (10) recommending defendant enter into a plea agreement.

Out of these ten claims of ineffective assistance of counsel, only one – recommending defendant enter his plea - challenges the validity of the plea. The claims of fraud and collusion with the government are centered around activities occurring prior to the plea agreement but the court will address those claims as well.

To establish a successful claim for ineffective assistance of counsel, defendant must show that "(1) that counsel's performance was deficient, and (2) that this deficient performance prejudiced his defense, depriving him of a fair trial with a reliable result." United States v. Orange, 447 F.3d 792, 796 (10th Cir. 2006) (citing

Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984)).  To prove counsel's performance was deficient, defendant "must show that his attorney['s] representation fell below an objective standard of reasonableness."  Romano v. Gibson, 278 F.3d 1145, 1151 (10th Cir. 2002) (quoting Strickland, 466 U.S. at 687–88).  To prove prejudice concerning the negotiation of the plea, defendant must show that there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Miller v. Champion, 262 F.3d 1066, 1072 (10th Cir. 2001).

Defendant's argument concerning the plea agreement is confusing, at best.  Defendant appears to assert that counsel was ineffective for recommending that defendant enter the plea agreement because there was no proof of the court's jurisdiction in this case.  Contrary to defendant's position, the government had extensive evidence which established that the crimes were committed in Kansas, giving this court jurisdiction over the matter.  Therefore, counsel was not deficient in advising defendant to plead guilty. Moreover, as pointed out by the government, the plea agreement negotiated in this case prevented defendant from receiving an additional five to fifteen year prison term because the agreement called for the dismissal of two counts which carried mandatory minimum consecutive sentences of five and ten years.  (Doc. 793 at 17).  Thus, assuming Strickland would apply, counsel was not ineffective.

Defendant also makes several claims of fraud and collusion between defense counsel and the government.  Defendant has cited absolutely no evidence to support any of these claims.  Defense

-11-

counsel in this case went above and beyond in strenuously defending his client in this matter.

Finally, the court notes that defendant's claims are inconsistent with his twice-sworn representations of satisfaction with the services of his counsel. Courts are entitled to honesty and candor, even from criminals. If all a defendant has to do to obtain relief under § 2255 is make unsupported claims which could have been, but never were, brought to the court's attention and which are totally contrary to sworn representations made by the defendant, then the court's efforts to secure voluntary and knowing pleas are a waste of time and judicial resources. See United States v. Soto, ---F.3d---, 2011 WL 5346068 (10th Cir. Nov. 8, 2011)("Fairness and justice do not dictate that a party may compel any judicial action on the basis of a lie.")

### Prosecutorial Misconduct

Defendant next spends a considerable amount of time asserting that the prosecutor committed misconduct by concealing grand jury material, prosecuting defendant because of his race, violating defendant's right to a speedy trial, and conspiring with defense counsel. The court, however, will not consider these claims for two reasons. First, these issues are not proper for review on collateral attack and should have been presented on direct appeal. United States v. Cox, 83 F.3d 336, 341 (10th Cir. 1996). Second, these claims are subject to the waiver contained in the plea agreement. See United States v. Morrison, No. 10-3210, 2011 WL 286365 (10th Cir. Jan.31, 2011); United States v. Miller, No. 01-6061, 2001 WL 1176423 (10th Cir. Oct. 5, 2001)(a waiver of collateral attack precludes defendant from bringing claims of prosecutorial misconduct).

Nevertheless, the court finds that defendant's allegations of prosecutorial misconduct are utterly without merit and lack any evidentiary support.

### Judicial Misconduct

Defendant also spends a significant amount of argument contending that the undersigned committed misconduct by forcing a court appointed attorney on defendant, concealing grand jury materials, allowing the use of evidence which should have been suppressed, coercing defendant to enter into a guilty plea, sentencing defendant to a disproportionate sentence and committing fraud.

All of defendant's allegations are wholly unsupported by the evidence in this case. Moreover, these claims are not properly raised in a collateral attack and should have been presented on direct appeal. See United States v. Challoner, 583 F.3d 745, 749 (10th Cir. 2009)(A defendant may not file a habeas petition "to test the legality of matters which should have been raised on appeal.").

Nevertheless, the record clearly shows that relief should not be granted on these claims. The magistrate judge appointed counsel after defendant's request. The undersigned judge did not appoint counsel. Moreover, and most importantly, defendant requested court appointed counsel. Counsel was not forced upon defendant by the court. The court also did not conceal any materials in this case and defense counsel did not make any motions concerning disclosure of grand jury materials. With respect to defendant's plea, the court's colloquy demonstrates that the plea was entirely defendant's decision. The court stated that it was fully prepared to go forward with a jury trial in this case. The review of the transcript in this case in no

way supports defendant's claim of coercion by the court.  Finally, as to defendant's claim of disproportionate sentences, the court fully advised defendant that the court was not aware of defendant's potential sentence until after review of the presentence report.  At no time did the court promise defendant that he would receive a sentence similar to any of his co-defendants.

**III. Conclusion**[3]

Accordingly, the court finds that the files and records conclusively show that defendant is entitled to no relief. Defendant's motion pursuant to 28 U.S.C. § 2255 is denied.  (Doc. 742).

IT IS SO ORDERED.

Dated this 28th day of November 2011, at Wichita, Kansas.

s/ Monti Belot

Monti L. Belot

UNITED STATES DISTRICT JUDGE

---

[3] Any other claims raised in defendant's motion which were not addressed by the court are either foreclosed by the waiver or due to defendant's failure to present them on direct appeal.

-14-